1029 Revolution Eyewear v. Aspex Eyewear. Mr. Nicodemus. Yes, Your Honor. Good morning, Your Honors. May it please the Court. The district court once again failed to comply with the all circumstances test of Metamune in granting a revolution's motion to dismiss Aspex's unenforceability counterclaim. Metamune says you consider all the circumstances in the case, and the district court only considered one, the covenant. The covenant not to sue under the 913 patent. But there are many other circumstances in this somewhat unique case that the district court should have considered, and which require that Aspex's counterclaim be tried. There's a whole portfolio of bottom-mounted patents in this case that are related to this 913 patent. Let me ask you about that. Yes. I mean, I guess after the briefs were filed, our court issued an opinion in Dow Jones. I know you were aware of that in May of this year. I'm sorry? This court issued an opinion in Dow Jones in May of this year. Are you familiar with that? Because you rely on the district court opinion in Dow Jones for your argument, right? Yes, Your Honor, among other cases. And that, I think you rely on two other district court cases. Tesco and Harris. Both of which rely on Dow Jones, or at least cite to Dow Jones. Dow Jones was reversed by our court a month ago. So gee, I don't know if you've had an opportunity to read the opinion. But I think the extent to which you rely on the rationale for Dow Jones, as I read it, is now gone because of the reversal. So tell me if you think I'm wrong about that. Well, I don't think we need to rely on Dow Jones, because we've been sued under three of these patents already. The 722, the 858, and the 913. There's no surprise, there's no mystery here that revolution does not want aspects in the bottom-mounted Iowa market. Indeed, the First Covenant, in this case, way back when, asked us to stay out. They don't want us in this market. If we re-enter with the same product that was sued under the 913 patent, we're going to get sued again. And this puts aspects in a catch-22 situation. Well, do you have any case you can point to that goes as far as you would have us go in terms of the interpretation of meninine, i.e., were there related patents that were never asserted in this particular case? Well, I don't have a case with the exact facts of this case, and I think that's the beauty of meninine, Your Honor. Well, how do you distinguish this case from Dow Jones? Well, we have a counsel statement in the 1050 appeal where he was asked if Mr. Nicodemus' client comes out with the same product, will he be sued? And counsel replied, possibly because we have a whole portfolio of bottom-mounted patents. And if that doesn't cause a defendant to have apprehension, Your Honor, I'm not sure what does. But is apprehension enough? I gather that there was no proposal to enlarge a counterclaim, to bring the other patents into the case. Is that right? That's correct, Your Honor. But the statement was made on the appeal of the last time the judge dismissed. And I don't think Dow Jones has the same facts here, Your Honor, because we've been sued on this portfolio before. Every time we enter the market, we're sued. Well, but also, your argument about metamune requires that we, with some certitude, agree with you that if this patent falls on the inequitable counterclaim, that those related patents will also fall. And I didn't see anything in the record, other than that bald assertion, that would support that. Well, there's many cases of this court, Your Honor, which indicate where the patents all derive from the same parent application. And the parent application is infected with inequitable conduct. There's a very, very good chance that those other patents are going to fall. And here, What's your best case? I couldn't. I'd have to look in my briefs, Your Honor. But we've cited a string out of this court. And I don't think that's a proposition that even revolution disputed. Now, Judge Cooper found that in granting our motion for attorney's fees the first time, that there was inequitable conduct. And even when she denied the summary judgment motion, she didn't withdraw her findings on materiality. And she said, OK, you know what? We're on summary judgment. There's an issue of fact on intent. But she made it a point of saying that Mr. Zellman's story, his explanation for his material misrepresentations and omissions might seem incredible. So we're asking for our day in court. We're talking about a one-day, one-and-a-half-day trial max because of the length of the prosecution history, and one witness. But why does that help us in coming up with a rule? Your particular case might be one-and-a-half days. But you don't suggest that we come up with a rule and we say, you get an adjudication of the inequitable conduct counterclaim if the trial is going to last less than two days, but not if it's going to be more. So if we give you the rule you're asking for, it's not going to matter. We could have a complicated, close, inequitable conduct case that could take a 10-day bench trial. I'm not suggesting that at all, Your Honor. What I'm suggesting is even Dow Jones doesn't have the history that we have here. We don't have a history of being sued on the same patents. This is what's going to happen. Aspects reenters the market, which it can do tomorrow. Well, you can't be sued on the same patent. You're concerned about the dozen or so related patents, I gather. That's right, including the two we were sued on before. And the covenant does not extend to any of them. Well, that's why I asked if you had brought the other patents into the case. We did not, Your Honor. We did not have a chance to, the way the posture of the case was set up. And we only, it was an interesting question. It might have been Judge Rader that asked it at the last hearing. Mr. Trojan, if Mr. Nicodemus' client comes out with this same product, will he be sued? And he made it a point of saying, we have a whole portfolio of bottom-out of patents, and possibly so, on one of the other ones, not the 913. And we have been sued three times already. Let me move on. It seems to me, if I understand your argument, that you kind of have an alternative argument, right? Sort of. I mean, even if we don't agree with you on your application of Medicaid, you still contend that he was entitled to a bench trial in this case, right? I do, Your Honor. And the other side, I think one of their stronger responses is to cite a non-presidential opinion by this court in Fort Cello. Are you familiar with that? I am. What's your response to that case? This is different, because in Fort Cello, there was scant evidence of inequitable conduct. Here, Judge Cooper found inequitable conduct one time, and the only reason she didn't grant summary judgment was she said that there was an issue of fact and intent, but the story seemed to be incredible. I think these patents are on the precipice, and they should be. They should be. So Aspects is in a position where if it re-enters the market tomorrow, it will be sued. We will pull the product. This court recognized in the 1050 appeal that that was the prudent thing to do. Why should we subject ourselves to extensive liability? We want to be in this market, and then Revolution will give us a covenant on another patent because the sales aren't enough. You aren't exposing it. Well, it seems to me you're still arguing the DJ, but I've moved on. I mean, what you get if you get a trial on inequitable conduct under your alternative argument are attorney's fees, right? I mean, I assume that's what you're out for in that context. If the judge, because it would be a bench trial, if the judge finds the patent unenforceable, we will get our attorney's fees. And the reason he gave for not, it seemed, you know, I have tremendous respect for Judge Gutierrez, but his fallback position seems to be on the attorney's fee issue, you're asking for a delayed trial on the merits. But under 285, you're allowed to present evidence. You have to present evidence to support your attorney fee award, and the only way we can do it here is through a trial on the intent issue. And so your position is, even if we disagree with you, that the counterclaim should still stand. In other words, if the counterclaim goes, so there's no more counterclaim on inequitable conduct, you still get a trial with respect to inequitable conduct in connection with attorney's fees, even though there's still no counterclaim standing. Absolutely, because under Monsanto and other cases, the court has independent jurisdiction to consider inequitable conduct issues under 285. And under Rule 54, we have to make the most for attorney's fees and present evidence, and we will do that. We will do that in the form of a bench trial. And Judge Gutierrez. Are you familiar with the case called Lightning World, which is a presidential opinion? And it was cited in the Forcello case. Yes, and I believe in that case, this court said that the court didn't have to hold a trial. Seems like it faced the issue we're confronting in this case and said, no, you don't have to waste judicial resources and have a bench trial. Well, that's right. And I still think this case is different, and you cannot. You cannot. How? You cannot separate the fact that you might say, Your Honor, that I'm arguing declaratory judgment jurisdiction, but I don't think you can separate out the fact that there's a history of litigation here and that the portfolio is infected with inequitable conduct. And in Lightning World, I don't believe we were on the cusp of proving inequitable conduct like we are here. I mean, Judge Cooper found it already. There's no question that these misrepresentations and omissions were material. There was a question of intent, and I'm trying to understand whether your position is that, as a matter of right, now you're entitled to litigate these issues, or whether you agree that there is an element of discretion and that the review is whether the court abused her discretion. Well, I think there is discretion, Your Honor, and I think the court abused it. He stated he declined to consider the evidence, the issues, anything. And I thought that was an abuse of discretion here, considering what went on in this case and considering what will happen if we have to reenter the market and be exposed to further infringement lawsuits. I think you have to look at each case individually, and I think in this case he did abuse his discretion because you had one judge finding inequitable conduct and awarding attorneys fees. You had the same judge saying that even though she was not going to grant summary judgment, the misrepresentations and omissions were material. And you had the same judge saying that, OK, there may be an issue on intent, but the man's story is incredible. I think there's a big difference here, from Lighting World, from Fort Sello. You're asking us to make findings on whether there was intent? No, I'm not. I'm asking you to grant us the opportunity to have a bench trial on intent. All right, let's hear from the other side. Mr. Trojan. Thank you, Your Honor. To please the court, we did exactly what the court told us to do previously. They told us to give up on future infringement. We got our claim dismissed. When we spoke last time in the colloquy, we were commenting on other potential patents in the portfolio. The court even commented and said, the court said, if you got other patents, you can sue them on. It doesn't take those off the table if they weren't the subject of this litigation. So when we covenanted not to sue in the future, it was our understanding upon what the court had said at oral argument that the issue of the other patents was simply not an issue in this case. Well, let me ask you, are you familiar with the Dow Jones decision? I cannot say that I know what the Dow Jones district court was. I did not know that that was reversed. It was reversed, which helps you. That's correct. But I'm just wondering, if you haven't read it, but if there are any circumstances you would concede that you could use the related patents for a DJ jurisdiction? That they could use the related patents for a DJ jurisdiction. If I accuse them of infringement under them, then they could file them. But it's only if those particular patents are raised in the suit in the initial stating.  And I would think that's the issue, I believe, the courts raised earlier. Why weren't these other patents brought into this particular case, the 913 case, at the time that they answered in counterclaim for inequitable conduct and inflicted it? The other concern that I have about going forward, even if it is true that the district court has independent, if the DJ action goes away, that doesn't mean it can't address 285 issues as well, right? And so the court still has the power to look at issues to award attorney's fees, and we don't dispute that. But before when Judge Cooper found inequitable conduct, that whole issue was appealed. And then we have a serious legal contention in that particular case as to whether legally, as a matter of law, she's wrong. And so if we were to, and the court never addressed that on the merits because it dismissed as that appeal being moved. And so we would literally, having already briefed those issues, go back, have a trial on intent, even if intent was found. We would be and just come back here again to address the legal issues, which we already addressed in an earlier appeal, but that appeal got dismissed. Well, we can't make law that gets you off the hook. Do you agree, then, that the district court did have jurisdiction under 285, retained jurisdiction to decide the attorney's fees issue, and therefore should have had a bench trial on inequitable conduct? No, it retained jurisdiction under 285 to hear the attorney's fee issue, and it declined to do so. It exercised its discretion. And under what standard is the district court able to decline to do so when he otherwise would have jurisdiction, even in the absence of a pending counterclaim? It's discretionary, because 285, the award of attorney's fees under 285 is discretionary. OK, it's discretionary, but you still need to apply standards upon which we would evaluate whether or not someone abused their discretion. What standard? I mean, here, am I wrong? The district court said one thing, the tail shouldn't wag the dog. Correct. He didn't give reasons about judicial resources. He didn't give reasons about the merits of the case. He didn't give reasons about they raised this counterclaim belatedly. I mean, all the kinds of things the lightning world relied on. How are we supposed to evaluate whether or not he abused his discretion? Well, I would say that he did address the issue of judicial resources, that the fact that the whole argument on the tail not wagging the dog is the fact that you have a delayed trial on the merits of the underlying claim. Under that standard, would any district court ever abuse his discretion if he declined to have a trial on 285 attorney's fees in the absence of a counterclaim? I would have to think long and hard about that. I cannot. In this particular situation, I don't think it's considering that we've entered into dismissing the DJ action. Well, that's what we're talking about. We're talking about a hypothetical where you've dismissed the DJ, and what you have left is a trial on attorney's fees. You have a motion for attorney's fees, and I thought you started off by agreeing that that motion is still alive, and the district court is still compelled to litigate, to evaluate that. No, no. I didn't mean to say that it was compelled to litigate the issue and have a trial. It has jurisdiction. Well, what criteria is the district court supposed to use in evaluating whether or not he or she has to have a trial on the 285 or has a trial or not? If a court believes that, if it exercises its discretion to hear the 285 trial, and it decides that that would be the same as having the original trial, and it says that would be the case. That would always be the case. When would that not be a circumstance? If you've got the 285 left, and that's all you have left. And in the absence of summary judgment, so that's one exception. If you can grant summary judgment of inequitable conduct or no inequitable conduct, you can get rid of it. But tell me why that wouldn't always be the case, that if you have to have a bench trial, you have to have a bench trial. That would be true of every case that raised attorney's fees in connection with inequitable conduct. No? Well, that's what's unique about district court discretion. I mean, the court can look at a whole host of factors and weigh those factors. And if the district court, in its discretion, believes in a particular case that the judicial resources argument wins the day, then that's within its discretion to weigh it that way. I'm not saying that not every district court would exercise its discretion in that way. And if the district court chose not to, it would not be an abuse of discretion in the other direction either. But since it is a discretionary issue, I think that it's up to the district court to evaluate the cases. And what precedent do you think of ours supports your conclusion in that regard? My argument is based on general principles that 285 is based upon, is reviewed as an abuse of discretion standard. And just a general experience with abuse of discretion standards suggests that there's no case. So in other words, there's no case of ours that, so we haven't decided that issue yet? I am unaware of that specific issue being decided, other than the cases where addressing the ability of the court to dismiss the attorney's fees if it believes it's the tail wagging the dog. And I have nothing to add. Any more questions, Mr. Turgeon? Any more questions? Thank you, Mr. Turgeon. Mr. Nicodino? Yes, Your Honor, two brief points. On this issue that has caused some debate about why didn't we bring the other patents in at the beginning of the case, simple, there was no threat. But then when we see in the midst of the case that Revolution asks us to stay out of the market vis-a-vis that First Covenant, and then makes the statements that they made at oral argument at the 1050 appeal, that puts things in an entirely different light for us. Well, let me ask you, am I misunderstanding this? Or it's not like you, if you feel that you have some threat from these other patents, you could walk into district court tomorrow and file a DJ on those. The only question we're deciding is whether or not you ought to be able to bring those in at the 11th hour in connection with an assertion just of this patent, right? I understand, Your Honor. I'm just addressing the comment about why didn't we sue on all 12 of them at the beginning of the case. Probably some of them didn't even exist. And the others, we were under no threat of. And actually, we weren't even informed of any of these patents until they sued us. This is your problem, isn't it? If there's no threat as to the other patents, and you no longer have a threat as to the patent that was in suit, you're asking the district court and us to take an action that would answer a lot of questions that haven't been asked. Well, I don't agree, Your Honor, because you don't even need a threat under MedImmune anymore. It's the parties with adverse legal positions and the totality of circumstances indicate that the court should exercise its declaratory judgment jurisdiction. That's why I'm saying that the court should have done that here because of the MedImmune case and because of the all circumstances test. To declare unenforceable a dozen unknown, unnamed patents. No, we want to declare unenforceable the 913. But your reason is that you tell us, I'm not so sure that that's accurate, but that it will automatically render unenforceable every patent related to the 913. As I read your cases, as I read the cases of this court, because the 913 application is the parent  an equitable conduct in the prosecution of that parent application, it infects all of the children. What does infect mean? That it automatically invalidates or makes unenforceable the children? Well, in any inequitable conduct case, Your Honor, even if you establish the threshold of materiality intent and after balancing, the court still has some discretion not to find inequitable conduct. But I know of no case in this court where that has happened. So is it automatic? I don't think anything is automatic, but I think we're 95% of the way there if we prove inequitable conduct of the 913 patent. The others' patents will fall? Yes. Have you raised, do you have a counterclaim of inequitable conduct in connection with the other suits where you say you've been sued on these other patents and a district court proceeding that's pending, I presume? I assume you've raised an inequitable conduct counterclaim? In one of them, we did. In the other one, the case was dropped about six months into it. And I don't think we answered. That's my recollection, but I could be wrong about that. The other issue I wanted to touch on is the district court not giving any reasons for its refusal to entertain the attorney's fees issue here. I don't think saying a delayed trial merits its reasons because you're allowed to present evidence and you must present evidence in support of an attorney's fees motion. And inequitable conduct usually requires a trial. That means there will be a trial and that's what we're entitled to. So simply saying, I don't want to hear it, or it's delayed, doesn't tell anyone anything. He didn't talk about judicial economy. He didn't talk about efficiency. He didn't talk about anything. He actually said that- Okay, now this is rebuttal, Mr. Nicodemus. Is this in rebuttal to anything that Mr. Trojan has said? Mr. Trojan's argument that the court did give reasons. One of your honors asked him, did the district court give reasons for refusing to entertain the 285 claim? And he said, I think they did. And then he gave further explanation. That's in rebuttal to that. Okay. All right. Thanks. Any more questions? Questions for Mr.? Thank you, Mr. Nicodemus and Mr. Trojan. The case is taken under submission. Thank you.